IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Betsy B. Fox,                                  ) | C/A No. 1:20-cv-706-SAL |
|                                                      ) | |
| Plaintiff,     ) | |
|                                                      ) | |
| v.                                                ) | |
|                                                      ) | **OPINION & ORDER** |
| Walmart, Inc., Wal-Mart Stores East, LP ) | |
| and Wal-Mart Associates, Inc.      ) | |
|                                                      ) | |
| Defendants.   ) | |
| _____ ) | |

This matter is before the court on Defendants Walmart, Inc., Wal-Mart Stores East, LP, and Wal-Mart Associates, Inc.'s ("Defendants") Motion for Partial Summary Judgment (the "Motion"). [ECF No. 48.] For the reasons set forth below, the court denies Defendants' Motion.

## BACKGROUND & PROCEDURAL HISTORY

This case stems from a trip and fall outside of a Walmart store. Plaintiff claims she was injured after "tripping over defective and broken concrete at the front entrance" of the Walmart store located at 2035 Whiskey Road in Aiken County, South Carolina (the "Aiken Store") on April 14, 2017. [ECF No. 1, Compl. ¶¶ 10–11.] On February 12, 2020, she filed a complaint alleging one cause of action against Defendants: negligence/gross negligence. *Id.* ¶¶ 20–25. Defendants answered the complaint, and the case proceeded to discovery. [ECF No. 6.]

On June 11, 2021, Defendants moved for summary judgment on Plaintiff's request for punitive damages. [ECF No. 48.] Plaintiff filed her memorandum in opposition on June 25, 2021. [ECF No. 53; *see also* ECF No. 73.][1] The matter is ripe for resolution by the court.

---

[1] The documents filed in ECF No. 73 were initially submitted to the court for *in camera* review due to a confidentiality designation. Defendants consented to the removal of the confidentiality designation, and the documents were publicly filed.

1

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and an issue is "genuine" if it could cause "a reasonable jury [to] return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

To meet its burden, the moving party must point to specific evidence in the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must then consider the evidence in a light most favorable to the non-moving party. *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). In doing so, the court "cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Offs. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015).

If the moving party meets its burden, the burden shifts to the non-moving party to point to portions of the record demonstrating that a material fact is genuinely disputed. *See* Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. at 324. "The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## ANALYSIS & DISCUSSION

Defendants' Motion is a "no evidence" summary judgment motion. They seek summary judgment on Plaintiff's claim for punitive damages because, in their view, there is a complete absence of evidence indicating that they acted willfully, wantonly, recklessly, or maliciously. [ECF No. 48 at 7–8.] That is, that Plaintiff cannot prove by clear and convincing evidence that Defendants "knew or should have known of the allegedly hazardous condition prior to Plaintiff's

fall." *Id.* at 7.

If Defendants are correct that the record is devoid of evidence demonstrating they acted willfully, wantonly, or recklessly, this court must grant them judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Berberich v. Jack*, 709 S.E.2d 607, 612 (S.C. 2011). If, however, Plaintiff demonstrates that the record is sufficient for a jury to conclude that there is clear and convincing evidence proving Defendants acted with such culpability, this court must deny the Motion. *See Berberich*, 709 S.E.2d at 612; S.C. Code Ann. § 15-33-135; *Anderson*, 477 U.S. at 255. Thus, the court must determine whether there is sufficient evidence in the record to allow Plaintiff's claim for punitive damages to proceed.

## I. Punitive Damages: What Does the Plaintiff Need to Show?

Before considering the parties' positions, the court begins with outlining what is necessary to prove punitive damages under South Carolina law. For starters, punitive damages cannot be awarded if a defendant's conduct is merely negligent. *Lengel v. Tom Jenkins Realty, Inc.*, 334 S.E.2d 834, 837 (S.C. Ct. App. 1985). A defendant is negligent when he fails to exercise due care. *Berberich*, 709 S.E.2d at 612. To obtain punitive damages, a defendant's conduct must be that of higher culpability—recklessness, willfulness, or wantonness. *Id.* While the difference between mere negligence and conduct of higher culpability that would justify a punitive damages award is a matter of degree, a defendant's conduct may rise to the necessary culpability level for punitive damages if the defendant is consciously or knowingly negligent or the defendant should have known of its negligence. *Id.* ("It is well settled 'that negligence may be so gross as to amount to recklessness, and when it does, it ceases to be mere negligence and assumes very much the nature of willfulness.'" (quoting *Jeffers v. Hardeman*, 99 S.E.2d 402, 404 (S.C. 1957))).

As the South Carolina Supreme Court described it: "[i]f a person of ordinary reason and

3

prudence would have been *conscious* of the probability of resulting injury, the law says the person is reckless or willful and wanton, all of which have the same meaning—the conscious failure to exercise due care." *Id.* (emphasis added); *see also Rogers v. Florence Printing Co.*, 106 S.E.2d 258, 264 (S.C. 1958) (explaining that the proper test for considering punitive damages is whether "at the time of his act or omission to act the tort-feasor [was] conscious, *or chargeable with consciousness*, of his wrongdoing." (emphasis added)). Notably, a defendant's conduct may amount to recklessness even when the defendant makes a conscious decision to act or not act based on the defendant's subjective assessment of risks. *See McGee v. Bruce Hosp. Sys.*, 468 S.E.2d 633, 637 (S.C. 1996) (finding a doctor's conscious decision to not re-position a patient's catheter after "carefully weigh[ing] the risks of re-position[ing] the catheter and decid[ing] to leave it in its original position" could be reckless when "several experts testified that moving the catheter posed no risks"). Thus, if the record is sufficient for a jury to find that Defendants knew or should have known of a hazardous condition that the "person of ordinary reason and prudence" would have remedied, Defendants' Motion must be denied. *Berberich*, 709 S.E.2d at 612.

## II. Does Plaintiff Have Enough Here?

To support their "no evidence" position, Defendants specifically point to the testimony of Plaintiff's liability expert, Bryan Durig. [ECF No. 48 at 8]. Mr. Durig testified that there is no evidence Defendants had actual knowledge that the concrete was in a hazardous condition prior to Plaintiff's fall. [*See* ECF No. 48-7 at 57:2–58:11].

While Plaintiff does not respond directly to this specific portion of Mr. Durig's testimony, Plaintiff's position is that there is other evidence in the record sufficient for a jury to determine "that Walmart actively ignored the existence of a known trip hazard." [ECF No. 53 at 11]. In support of her argument, Plaintiff provides the following evidence:

4

- A photograph showing broken concrete outside of the Aiken Store, taken by Walmart's contractor on January 10, 2016. *Id.* at 5.

- A copy of Walmart's "Standard Operating Procedure" for conducting safety sweeps requiring employees to "[l]ook for potential hazards" and "[m]ake sure all potential hazards are eliminated." [ECF No. 73-2 at 1.]

- Testimony from Defendants' Rule 30(b)(6) designee, Brent Guice, indicating that Defendants were aware of the crack's existence but determined it not to be a hazard. [ECF No. 53-8 at 52:23–24, 83:13–19, 84:8–13, 107:12–14, 108:17–20.]

Viewing the evidence in the light most favorable to Plaintiff, the court agrees there is sufficient evidence by which a jury could find that Defendants were reckless, willful, or wanton in failing to discover or repair the broken concrete. Thus, despite Defendants' arguments to the contrary, this is not a "no evidence" summary judgment situation.

The court notes that it is unclear at this juncture whether Defendants' position is that they never saw the crack or that they saw the crack but determined it not to be a hazard,[2] but there remains sufficient evidence for a jury to award punitive damages under either scenario.

First, if Defendants did not see the crack before Plaintiff's fall, a reasonable jury could determine that they should have. *See Berberich*, 709 S.E.2d at 612 ("If a person of ordinary reason and prudence would have been conscious of the probability of resulting injury, the law says the

---

[2] Both the Aiken Store's assistant manager and Defendants' Rule 30(b)(6) witness testified that they were unaware of the crack being reported before Plaintiff's incident, ECF Nos. 48-2 at 42:13–17; 53-8 at 87:4–9, 126:22–127:2, and the Rule 30(b)(6) witness also testified that Defendants are unaware of when the crack came into existence, ECF No. 53-8 at 87:20–88:7, 91:1–6, 119:14. However, immediately after testifying that Defendants did not discover the crack until Plaintiff's incident, Defendants' Rule 30(b)(6) witness says that Defendants may have seen the crack prior to then and determined it not to be a hazard. *Id.* at 86:23–24, 87:2–3, 107:12–14, 109:1–4. At one point, he says Defendants "knew [the broken concrete] was there at least an hour before or during the time [of Plaintiff's incident.]" *Id.* at 84:11–13.

5

person is reckless or willful and wanton, all of which have the same meaning—the conscious failure to exercise due care.")  As Plaintiff notes, Defendants' safety sweep policies require associates look for potential hazards and alert their supervisors when repairs are needed.  [ECF No. 53 at 6]; *see* [ECF Nos. 73-2 at 1; 73-4 at 1].  This specifically includes possible hazards in the parking lot.  [ECF Nos. 73-3 at 1; 73-4 at 1].  Further, Defendants' Rule 30(b)(6) designee testified that these policies require associates to perform safety sweeps each time they enter or exit the building.  The same designee acknowledged that the crack at issue was in a heavily trafficked area in front of one the Aiken Store's entrances.  [ECF No. 53-8 at 129:18–24, 138:25–139:2, 140:11–19].  He acknowledged that "*if* [the crack] existed for a day [before Plaintiff's fall, employees] could have seen that and observed that." *Id.* at 118:20–21 (emphasis added).

While "scientific" proof may not be available to determine when the crack came into existence, there are other means by which a jury might determine that it was there long enough for Defendants to have seen and corrected it before Plaintiff's fall.  [ECF No. 48-7 at 57:24–58:11].  Plaintiff points to a 2016 photo and additional Rule 30(b)(6) testimony.  [ECF No. 53 at 5–6.]  The 2016 photo was taken by the James W. Sewall Company.  A reasonable jury could rely on the photo to determine that the crack existed, and absent evidence of repair in the intervening period, the crack remained present and a hazard at the time Plaintiff fell.  *See id.* at 5.  The photo evidence is buttressed by Defendants' Rule 30(b)(6) designee's testimony that the crack existed for "at least an hour before" the accident.  [ECF No. 53-8 at 84:11–12, 107:16–19, 163:21–24].  Taken together, a reasonable jury could conclude that Defendants should have known about and addressed the crack prior to Plaintiff's fall.

Second, if Defendants were aware of the crack before Plaintiff's incident, a reasonable jury could conclude that Defendants were reckless in making that subjective determination to not treat

it as a hazard. *See McGee*, 468 S.E.2d at 637 (finding sufficient evidence of recklessness to support punitive damages where the defendant consciously decided not to reposition his patient's catheter and several experts testified that moving it posed no risks). In that regard, Plaintiff submits a photograph of a "core sample" of the concrete, revealing that the crack formed a one-inch change in elevation in the concrete. [ECF No. 53 at 3.] Plaintiff also points to Defendants' internal policies requiring concrete to be repaired and replaced when certain types of cracks have formed elevation changes greater than 3/8-inch. [ECF No. 53-6 at 8-10.] And finally, Plaintiff notes that both sides' expert witnesses testified that the concrete was out of compliance with applicable safety standards, ECF Nos. 53-4 at 63:22, 69:16; 53-5 at 82:3–10, and several of Defendants' representatives and employees testified that they believed the crack could cause someone to trip or that it should have been repaired, ECF Nos. 53-3 at 51:11–52:7; 53-8 at 85:12–16; 53-15 at 61:4–12. Thus, the court agrees with Plaintiff that a reasonable jury could find from the evidence that Defendants were reckless in making this subjective determination that the crack did not need to be repaired and that punitive damages are warranted in this case. *See McGee*, 468 S.E.2d at 637.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment, ECF No. 48, is **DENIED**.

**IT IS SO ORDERED.**

/s/ Sherri A. Lydon
United States District Judge

March 14, 2022
Florence, South Carolina